## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 23, 2021

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 23, 2021

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 97766-6 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| TIMOTHY HAAG, | ) | Filed : September 23, 2021 |
| | ) | |
| Petitioner. | ) | |
| | ) | |
| | ) | |

WHITENER, J.—It is well established that "children are different from adults" for sentencing purposes. *State v. Houston-Sconiers*, 188 Wn.2d 1, 18, 391 P.3d 409 (2017). When a child commits the crime of aggravated first degree murder, the federal and state constitutions, the enactments of our legislature, and our case law demand that such a child be treated differently from an adult. Here, this body of law demands another resentencing hearing for Timothy Haag.

In 1995, Haag was sentenced to mandatory life without parole for a crime he committed at the age of 17. In 2018, at a *Miller*-fix[1] resentencing conducted pursuant

---

[1] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

*State v. Haag (Timothy)*, No. 97766-6

to RCW 10.95.030, the resentencing court expressly found that "Haag is not irretrievably depraved nor irreparably corrupt." 1 Verbatim Report of Proceedings (VRP) (Jan. 19, 2018) at 25. Yet the court resentenced Haag to a term of 46 years to life; the earliest that he could be released is at the age of 63. *Id.* at 27. Haag sought review in this court, arguing that the trial court erroneously emphasized retribution over mitigation and that his sentence amounts to an unconstitutional de facto life sentence. We agree.

We hold that the resentencing court erred because it gave undue emphasis to retributive factors over mitigating factors. We also hold that Haag's 46-year minimum term amounts to an unconstitutional de facto life sentence. We reverse and remand for resentencing in accordance with this opinion.

## FACTS AND PROCEDURAL HISTORY

In July 1994, at the age of 17, Haag killed Rachel Dillard, his 7-year-old neighbor. At that point in his life, Haag had already gone through several difficult experiences: abandonment by his father; poverty; bullying at school; "psychological maltreatment by his stepfather[;] and the sudden loss of his best friend," Alex Dillard[2]—the victim's older brother—who had recently fled the Dillard family home. Clerk's Papers (CP) at 68. He was also a closeted gay juvenile in a small

---

[2] Alex Dillard now goes by Alex Stephen Anderson. We refer to him as Alex Dillard for clarity. No disrespect is meant.

*State v. Haag (Timothy)*, No. 97766-6

community in the early 1990s; he worried that if anyone learned he was gay, he would be rejected. *Id.* at 71-72.

Convicted in 1995 of aggravated first degree murder for the killing of Rachel Dillard, Haag has spent the decades since in prison. During that time, Haag has shown tremendous growth and maturity. He accumulated only one infraction, in 1997. *Id.* at 88-89. He earned a high school diploma "as soon as he got to Walla Walla [State Penitentiary]." 2 VRP (Jan. 12, 2018) at 159. He has worked throughout his incarceration, including in the prison chapel and in the kitchen. *Id.* He became a Jehovah's Witness, testifying that "as [a] [W]itness I believe in trying to help others." *Id.* at 162.

In 2018, Haag was resentenced under our *Miller*-fix statutes, RCW 10.95.030(3) and RCW 10.95.035. Two expert witnesses, Dr. Marty Beyer and Dr. Ronald Roesch, wrote detailed analyses and testified on Haag's behalf at the resentencing hearing. Additional testimony was offered by a volunteer prison chaplain, Kenneth Pearson; Dorcy Long, who was incarcerated with Haag; Sharon Owens, Haag's mother; Janice Beaty, Haag's aunt; and Haag himself.

Both of Haag's expert witnesses independently administered the SAVRY test (Structured Assessment of Violence Risk in Youth test) to analyze whether, at the time of the crime, Haag would likely have reoffended. CP at 76, 90. Both concluded

3

*State v. Haag (Timothy)*, No. 97766-6

that Haag would have been at a low risk of reoffending at the time of the offense. *Id.* at 77, 92.

One of the experts, Dr. Roesch, performed further tests: the Personality Assessment Inventory (PAI), a self-reported test used to analyze "adult personality and psychopathology," and the HCR-20 (Historical Clinical Risk Management-20), which assessed Haag's current risk of reoffending. *Id.* at 89, 92. According to Dr. Roesch, "the PAI does not indicate any serious mental health issues that would demand treatment." *Id.* at 90. Similarly, the HCR-20 showed that Haag "is currently considered a low risk for reoffending." *Id.* at 93.

Haag also presented evidence that he has matured in prison. Pearson, the volunteer prison chaplain, testified by video recording that Haag is "a mature adult." 2 VRP (Jan. 12, 2018) at 108. Dr. Roesch concluded similarly. *Id.* at 83. Haag himself testified about the sincere remorse he feels for the crime. *Id.* at 161. He also testified that he knew he would not commit another violent act because prison had presented him with situations where he could have responded with violence, but he had chosen not to. *Id.* at 165-66. Haag requested a 25-year minimum term. CP at 59.

In contrast, the State offered no expert testimony and no testimony designed to rebut the evidence produced showing that Haag was unlikely to reoffend. Instead, the State offered victim impact testimony from Judith Rodger Dillard, Rachel's mother; Alex Dillard, Rachel's brother; Susan Kahn Dillard, Rachel's older sister;

*State v. Haag (Timothy)*, No. 97766-6

John Dillard, Rachel's father; and Dan Huntington, a family friend and Rachel's former tae kwon do instructor. Alex Dillard testified, "I do not believe that this *man* is capable of being—I do not believe that this crime is capable of reform." 2 VRP (Jan. 12, 2018) at 141 (emphasis added). He also stated, "I don't think that you can equate a 25-year sentence for, you know, someone who murdered someone in a bar fight, and give that same sentence to a *baby killer*." *Id.* (emphasis added). His family expressed similar sentiments. *See, e.g.*, *id.* at 142-47. The prosecutor asserted that the "sentencing isn't about [Haag]" but "about justice for an innocent little girl whose last 15 minutes of life were a struggle for breath while being throttled by *that man's* hands." *Id.* at 114 (emphasis added). The State requested a 60-year minimum sentence. *Id.* at 121.

The resentencing court acknowledged that the "State offered nothing to rebut [the] conclusions and assertions" of Haag's experts regarding Haag's rehabilitation. 1 VRP (Jan. 19, 2018) at 23. However, it also found that "there is no analysis that informs the Court that Mr. Haag has addressed and overcome certain factors that led to the violent murder of . . . [a] small child." *Id.* In deciding on Haag's new sentence, the court explained its reasoning:

> So the Court is faced with the daunting task of properly weighing a multiplicity of factors, which include a vile, cowardly, and particularly heinous multi-step strangulation and drowning of a defenseless, sixty-five pound little girl committed by a three hundred pound[,] seventeen-year-old young man that resulted in a convict[ion]

5

*State v. Haag (Timothy)*, No. 97766-6

> for aggravated murder in the first degree. I'm also to consider the then-youthful brain of Mr. Haag with diminished decision-making capacity, who simultaneously lived through some very difficult circumstances while still enjoying a supportive relationship and activities. And also, a man convicted of murder who has exhibited a stellar track record in prison and has been assessed as a low risk for violently re-offending.
>
> In balancing these pieces of the puzzle, the *Miller* court and the statutory factors, and all the other factors that I mentioned earlier, the Court does now hereby impose a sentence—a minimum sentence of forty-six years in prison and a maximum of life in prison.

*Id.* at 27.

Haag appealed, arguing that the resentencing court failed to meaningfully weigh the mitigating factors and that his sentence amounted to an unconstitutional de facto life sentence. *State v. Haag*, No. 51409-5-II, slip op. at 13, 15 (Wash. Ct. App. Sept. 10, 2019, *as amended* Sept. 17, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2051409-5-II%20Unpublished%20Opinion.pdf. The Court of Appeals upheld his sentence. *Id.* at 13-16.

Haag petitioned this court for review. The State filed an answer. We stayed our decision to grant review pending our decision in *State v. Delbosque*, 195 Wn.2d 106, 456 P.3d 806 (2020). We then requested and received supplemental briefing regarding granting review from both parties. The Fred T. Korematsu Center for Law and Equality also filed two amicus briefs in support of granting the petition for review. We granted review. Haag and the Korematsu Center filed further briefs.

*State v. Haag (Timothy)*, No. 97766-6

Subsequent to oral argument, we requested and received further briefing on *Jones v.*

*Mississippi*, 593 U.S. __, 141 S. Ct. 1307, 209 L. Ed. 2d 390 (2021).

## STANDARD OF REVIEW

"We will reverse a sentencing court's decision only if we find 'a clear abuse

of discretion or misapplication of the law.'" *Delbosque*, 195 Wn.2d at 116 (internal

quotation marks omitted) (quoting *State v. Blair*, 191 Wn.2d 155, 159, 421 P.3d 937

(2018)). "A trial court abuses its discretion when 'its decision is manifestly

unreasonable or based upon untenable grounds.'" *Id.* (internal quotation marks

omitted) (quoting *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012)).

A decision is based on untenable grounds when its factual findings are

unsupported by the record. *Id.* (quoting *Lamb*, 175 Wn.2d at 127). "We review

findings of fact for substantial evidence," which "'exists where there is a sufficient

quantity of evidence in the record to persuade a fair-minded, rational person of the

truth of the finding.'" *Id.* (citing *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P.3d 705

(2014), and quoting *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)).

## ANALYSIS

Haag argues that the sentencing court erred because it placed more emphasis

on retribution than mitigation and that his sentence amounts to an unconstitutional

de facto life sentence. We agree. At a *Miller*-fix sentencing conducted pursuant to

RCW 10.95.030, a trial court must place greater emphasis on mitigation factors than

7

*State v. Haag (Timothy)*, No. 97766-6

on retributive factors. Further, a minimum sentence of 46 years amounts to a de facto life sentence for a juvenile.

I.      Juvenile sentencing under federal and state law

Haag's appeal arises out of a line of cases and statutes that control juvenile sentencing in our state. In *Roper v. Simmons*, the United States Supreme Court held that "[t]he Eighth and Fourteenth Amendments [to the United States Constitution] forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." 543 U.S. 551, 578, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). Then, in *Graham v. Florida*, the Court held that the Eighth Amendment forbids "the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. 48, 82, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

Next, the Court decided *Miller*, 567 U.S. 460. Noting that "*Roper* and *Graham* establish[ed] that children are constitutionally different from adults for purposes of sentencing," *id.* at 471, the Court held that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Id.* at 470. Although the Court still permitted *non*-mandatory life-without-parole sentences for juveniles, the Court "require[d the sentencer] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

8

*State v. Haag (Timothy)*, No. 97766-6

The Court based its holding on several principles. These included "juveniles['] . . . diminished culpability and greater prospects for reform," which was derived from "common sense" as well as "science and social science." *Id.* at 471. In particular, the Court made clear that "'the case for retribution is not as strong with a minor as with an adult.'" *Id.* (internal quotation marks omitted) (quoting *Graham*, 560 U.S. at 71).

*Miller* did more than just prohibit mandatory life without parole for juveniles. It also "determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects *irreparable corruption*.'" *Montgomery v. Louisiana*, 577 U.S. 190, 208, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016) (emphasis added) (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 479-80). Under *Miller*, it is not enough for a sentencing court to merely consider how children are different. *Id.* Rather, "[e]ven if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child *whose* crime reflects 'unfortunate yet *transient immaturity*.'" *Id.* (emphasis added) (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 479). While "*Miller* did not impose a formal factfinding requirement" that sentencing courts find a child is incorrigible or irreparably corrupt, states are not "free to sentence a child whose crime reflects transient immaturity to

9

*State v. Haag (Timothy)*, No. 97766-6

life without parole." *Id.* at 211. Such a punishment for such a child violates the

Eighth Amendment. *Id.* [3]

Most recently, the Court decided *Jones*, 141 S. Ct. 1307. There, the Court

reaffirmed that *Miller* does not require a juvenile defendant to be found to be

incorrigible before sentencing that juvenile defendant to life without parole. *Id*. at

1311.

In response to *Miller*, our state legislature enacted what are commonly

referred to as *Miller*-fix statutes, including RCW 10.95.030(3) and RCW 10.95.035.

*See Delbosque*, 195 Wn.2d at 111 n.1. Under RCW 10.95.030(3)(a)(i) and (ii),

juveniles convicted of aggravated first degree murder no longer face mandatory life

without parole. A sentencing hearing conducted under the *Miller*-fix scheme has

certain requirements:

> In setting a minimum term, the court must take into account mitigating
> factors that account for the diminished culpability of youth as provided
> in *Miller v. Alabama*, 132 S. Ct. 2455 (2012)[,] including, but not

---

[3] As the concurrence/dissent points out, Justice Sotomayor's dissent in *Jones* suggested that the *Jones* majority called this rule into question, if not outright abandoned it. *Jones*, 141 S. Ct. at 1328, 1331 (Sotomayor, J., dissenting). We conclude that the *Jones* majority does not, in fact, disturb this rule of constitutional law, rather, *Jones* holds only that no finding of incorrigibility is *necessary* prior to sentencing a juvenile to life without parole. *See Jones*, 141 S. Ct. at 1311. When turning to the *Jones* majority, the concurrence/dissent can assert only that the "*Jones* majority . . . explains that 'permanent incorrigibility is not an eligibility criterion' or 'a factual prerequisite' that 'a sentencer [must] find . . . before sentencing a murderer under 18 to life without parole.'" Concurrence/dissent at 8 (second and third alterations in original) (quoting *Jones*, 141 S. Ct. at 1315). Precisely—*Jones* holds there is no *required* finding of incorrigibility before imposing a life without parole sentence on a juvenile. 141 S. Ct. at 1311.

*State v. Haag (Timothy)*, No. 97766-6

limited to, the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated.

RCW 10.95.030(3)(b). Further, any juvenile who had been sentenced to life without parole prior to June 1, 2014 "shall be returned to the sentencing court or the sentencing court's successor for sentencing consistent with RCW 10.95.030." RCW 10.95.035(1).

Our court has expanded on this background. In *State v. Ramos*, we held that "*Miller* . . . appl[ies] to juvenile homicide offenders facing de facto life-without-parole sentences," not just "literal" life-without-parole sentences. 187 Wn.2d 420, 437, 387 P.3d 650 (2017). In *State v. Bassett*, we held that article I, section 14 of the Washington Constitution categorically prohibits sentencing juvenile offenders to life without parole. 192 Wn.2d 67, 91, 428 P.3d 343 (2018).

When conducting a *Miller*-fix hearing governed by RCW 10.95.035, "courts 'must *meaningfully* consider how juveniles are different from adults[ and] how those differences apply to the facts of the case.'" *Delbosque*, 195 Wn.2d at 121 (quoting *Ramos*, 187 Wn.2d at 434-35).[4] A resentencing court "'must do far more than simply

---

[4] *Ramos*, on which *Delbosque* relied in part, drew on *Miller*. *Ramos*, 187 Wn.2d at 442-44. While *Jones* suggests that there need not be any significant consideration of youth apparent in the record to render a juvenile sentence constitutional under *Miller* or the Eighth Amendment, 141 S. Ct. at 1319-20, *Delbosque* had previously made clear that the framework set forth in *Ramos* also "applies . . . to *Miller* hearings pursuant to RCW 10.95.030." 195 Wn.2d at 120. Thus, the rules from *Ramos* regarding *Miller*-fix hearings

11

*State v. Haag (Timothy)*, No. 97766-6

recite the differences between juveniles and adults and make conclusory statements that the offender has not shown an exceptional downward sentence is justified.'" *Id.* (quoting *Ramos*, 187 Wn.2d at 443). "Instead, the court must 'receive and consider relevant mitigation evidence bearing on the circumstances of the offense and the culpability of the offender, including both expert and lay testimony as appropriate.'" *Id.* (quoting *Ramos*, 187 Wn.2d at 443). As *Ramos* succinctly put it, "The sentencing court must thoroughly explain its reasoning, specifically considering the differences between juveniles and adults identified by the *Miller* Court and how those differences apply to the case presented." 187 Wn.2d at 444.

Additionally, in our state the "resentencing courts *must* consider the measure of rehabilitation that has occurred since a youth was originally sentenced to life without parole." *Delbosque*, 195 Wn.2d at 121 (emphasis added). Such hearings must therefore be forward looking, focusing on rehabilitation rather than on the past. *See id.* at 122.

It is on this foundation that Haag's case has come before us.

---

apply to this case via the operation of RCW 10.95.030—which governs here—irrespective of *Jones*. *See id.* This fits with the principles of federalism acknowledged by *Jones*. The Court made clear that states remain free to "impos[e] additional sentencing limits in cases involving defendants under 18 convicted of murder." *Jones*, 141 S. Ct. at 1323. In line with this, and with *Delbosque*, we clarify that it is this court's interpretation of our state statutory scheme and our precedent that control here.

*State v. Haag (Timothy)*, No. 97766-6

> II. The resentencing court clearly misapplied the law because it emphasized retribution over mitigation

Haag argues that the resentencing court erred because of its "fixation on retribution," which "overshadowed its obligations to conduct a sentencing that meets the requirements of *Miller*." Pet. for Review at 20. We agree.

The *Miller* Court made clear that retribution cannot take precedence in juvenile sentencing. *See* 567 U.S. at 472 ("Because '[t]he heart of the retribution rationale' relates to an offender's blameworthiness, 'the case for retribution is not as strong with a minor as with an adult.'" (internal quotation marks omitted) (quoting *Graham*, 560 U.S. at 71)). It, instead, focused on the "'mitigating qualities of youth.'" *Id.* at 476 (quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993)). This followed the Court's decision in *Graham*, where the Court noted that states must provide juvenile offenders with "some *meaningful opportunity* to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at 75 (emphasis added); *see also Miller*, 567 U.S. at 473 ("*Graham*'s reasoning implicates any life-without-parole sentence imposed on a juvenile.").

Our *Miller*-fix statute followed suit. "[T]he purpose [of the *Miller*-fix statute] is to require sentencing courts to 'take into account mitigating factors that account for the diminished culpability of youth as provided in *Miller*.'" *Bassett*, 192 Wn.2d at 90 (quoting LAWS OF 2014, ch. 130, § 9(3)(b) (codified at RCW 10.95.030(3)(b))).

13

*State v. Haag (Timothy)*, No. 97766-6

These factors include "'the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated.'" *Id.* at 94 (quoting RCW 10.95.030(3)(b)). Notably absent from this provision is any reference to retributive factors. *See id.* While courts must permit victim impact statements at resentencing hearings under RCW 10.95.035(b), the structure of the *Miller*-fix statutes shows that the legislature intended sentencers to focus on mitigating factors, with retribution playing a minor role. *See Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003) ("[A] court must not add words where the legislature has chosen not to include them."); *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-11, 43 P.3d 4 (2002) (plain meaning of a statute's language is the best indicator of legislative intent).

*Miller*-fix resentencing hearings must, therefore, focus on mitigation evidence. Resentencing courts must take into account the mitigating qualities of youth and its attendant circumstances. RCW 10.95.030(3)(b). Resentencing courts also "must consider the measure of rehabilitation that has occurred *since* a youth was originally sentenced to life without parole." *Delbosque*, 195 Wn.2d at 121 (emphasis added).

Finally, we have made clear that *Miller*-fix hearings must be forward looking, not backward looking. *Delbosque*, 195 Wn.2d at 122. True, we have not prohibited

14

*State v. Haag (Timothy)*, No. 97766-6

sentencers from taking into account retributive factors. *See Ramos*, 187 Wn.2d at 453 (impliedly permitting sentencer's invocation of the penological justifications from *Miller*, which would include retribution); *Delbosque*, 195 Wn.2d at 118 (impliedly permitting sentencer's use of the nature of the crime in its evaluations). But "'[t]he key question is whether the [juvenile] defendant is capable of change.'" *Delbosque*, 195 Wn.2d at 122 (quoting *United States v. Briones*, 929 F.3d 1057, 1067 (9th Cir. 2019)).

Here, the resentencing court improperly placed *more* emphasis on retribution than on mitigation. The court's focus was clearly backward looking, disregarding the forward-looking focus required by our statutes and our case law. Rather than treating the retributive factors as secondary, the resentencing court's emphasis on retribution was stark. It noted that "rehabilitation is not the sole measure in sentencing." 1 VRP (Jan. 19, 2018) at 25. Retribution also matters, the resentencing court declared, and "[u]nder the retributive theory, severity of the punishment is calculated by the gravity of the wrong committed." *Id.* With that principle guiding it, the court weighed what it termed "a vile, cowardly, and particularly heinous multi-step strangulation and drowning of a defenseless, sixty-five pound little girl committed by a three hundred pound[,] seventeen-year-old young man" against the mitigating factors. *Id.* at 27. The resentencing court's ultimate explanation of its

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

sentence—set out in full above, *see supra* pp. 5-6—shows its focus was backward looking, driven by retribution and not mitigation.

Even when the resentencing court considered youth, it primarily focused on the youth of the victim, Rachel Dillard, and not on Haag's youth at the time of the offense. *See* 1 VRP (Jan. 19, 2018) at 17. "Children are our most precious asset, they literally are the future," the court said, in reference to Rachel Dillard. *Id.* Rachel was a vessel of hope for the future, but these hopes "were obliterated when Miss Rachel was savagely slain by Mr. Haag." *Id.* at 18. In contrast, the resentencing court's discussion of Haag's youth was cursory at best. It is encapsulated by the court's comment that "according to case law Mr. Haag's youthfulness does reduce his culpability." *Id.* at 20. Thus, Haag's youth was not *meaningfully* considered as we require—only Rachel Dillard's was. *See Ramos*, 187 Wn.2d at 434-35 ("At the *Miller* hearing, the court must meaningfully consider how juveniles are different from adults [and] how those differences apply to the facts of the case.").

Focusing on Rachel Dillard's lost future rather than Haag's rehabilitation, the resentencing court drew a contrast between Haag and Rachel Dillard that exemplifies its focus on retribution and not on mitigation. By minimizing Haag's youth and making a "savage[ ]" of him, the resentencing court founded its resentencing decision on retribution: on the fact that Haag had taken a young life,

*not* on Haag's youth at the time of the crime or what he has done since his conviction. 1 VRP (Jan. 19, 2018) at 18.

The resentencing court supported its focus on retribution by finding that "there is no analysis that informs the Court that Mr. Haag has addressed and overcome certain factors that led to the violent murder of . . . [a] small child." *Id.* at 23. But Haag's rehabilitation evidence was voluminous and was uncontroverted by the State. He had only one infraction in prison, in 1997, and no evidence was presented of any poor behavior in the decades since. CP at 88-89. He obtained a high school diploma soon after entering prison. 2 VRP (Jan. 12, 2018) at 159. He worked throughout his incarceration in the prison chapel and the kitchen. *Id.* He became a Jehovah's Witness, and his religious beliefs motivate him to help others. *Id.* at 162. Both of Haag's expert witnesses concluded that he would have been at a low risk of reoffending just after having committed the crime. CP at 77, 92. One expert, Dr. Roesch, provided evidence that Haag is unlikely to reoffend now. *Id.* at 93. Expert testimony also provided evidence that Haag would have had trouble, as a 17-year-old, making decisions—even more so than the average juvenile. *Id.* at 73-74.

In contrast, the State produced only victim impact testimony. The only evidence the State presented on Haag's present mental state was a reference to a statement made by an unnamed person allegedly incarcerated alongside Haag that was conveyed by a third party via Facebook to Alex Dillard. 2 VRP (Jan. 12, 2018)

17

at 137. In fact, the resentencing court noted that the "State offered nothing to rebut [the] conclusions and assertions" regarding Haag being "a good candidate for rehabilitation." 1 VRP (Jan. 19, 2018) at 23. There was thus not "'a sufficient quantity of evidence in the record to persuade a fair-minded, rational person'" that Haag was not rehabilitated. *Delbosque*, 195 Wn.2d at 116 (quoting *Hill*, 123 Wn.2d at 644); *see also id.* at 124 (*Miller*-fix statute does not allocate the burden of proof to either the defendant or the State at a resentencing hearing). The resentencing court's finding of fact to the contrary therefore lacked substantial evidence, amounting to an abuse of discretion. *See Delbosque*, 195 Wn.2d at 116 (trial court abuses its discretion when a finding of fact lacks substantial evidence).

Overall, in the face of the substantial and uncontroverted mitigating evidence presented by Haag, the resentencing court favored retributive factors over an abundance of mitigation factors. We agree with Haag that "the uncontroverted evidence of change and maturity produced by Haag was impermissibly discounted by the [resentencing] court in its focus on the crime and the role of retribution." Suppl. Mem. in Supp. for Pet. for Review (Jul. 20, 2020) at 16. We hold that in a *Miller*-fix hearing conducted under RCW 10.95.030, retributive factors must count for less than mitigating factors. The resentencing court's inversion of this balance clearly misapplies our statutes and our precedent, amounting to reversible error. *See*

*State v. Haag (Timothy)*, No. 97766-6

*Delbosque*, 195 Wn.2d at 116 (clear misapplication of the law by a resentencing court is reversible error).

Taking a different approach, the Court of Appeals reasoned that trial courts have "'*complete* discretion'" to weigh the factors *however* they see fit in a *Miller*-fix sentencing. *Haag*, No. 51409-5-II, slip op. at 14 (emphasis added) (quoting *Houston-Sconiers*, 188 Wn.2d at 21). But *Houston-Sconiers* held "that sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system, regardless of whether the juvenile is there following a decline hearing or not." 188 Wn.2d at 21. This does not mean that a sentencing court's application of mitigating factors is unreviewable on appeal.

Our holding today does not prevent future trial courts from exercising discretion. They retain the discretion to determine whether and to what extent a juvenile offender has been rehabilitated, whether youthfulness contributed to the crime, and whether he or she is likely to reoffend. We do, however, provide guidance to resentencing courts, highlighting the very factors of mitigation that our legislature and this court have identified as paramount.

To reject Haag's argument, the Court of Appeals also relied on our statement in *Ramos* that "'we cannot reweigh the evidence [from a sentencing decision] on review.'" *Haag*, No. 51409-5-II, slip op. at 12 (quoting *Ramos*, 187 Wn.2d at 453).

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

But in *Ramos*, our overall concern was whether the resentencing court reasonably considered the appropriate factors and correctly applied *Miller*. *Id.* at 14. Reversing does not run afoul of *Ramos*, as here we are analogously concerned with whether the resentencing court correctly applied our statutes and our precedent. Our statutes and precedent require that mitigation factors count for *more* than retributive factors. Reversing on the ground that the resentencing court here did not adhere to that rule does not result in impermissible reweighing of the evidence but, instead, follows the requirements set forth in the analogous scenario presented in *Ramos*.

The State argues that "[t]he Petitioner's claim [regarding the sentence] comes down to a simple disagreement with the sentence and with the outcome of the trial court's evaluation." Resp. to Pet. for Review at 7. But Haag's claim amounts to *more* than a simple disagreement about the sentence. It shows how the resentencing court erroneously applied our precedent and our statutory scheme, thereby committing reversible error.

III.    Haag's sentence amounts to an unconstitutional de facto life sentence

Haag also argues that his 46-year minimum sentence amounts to an unconstitutional de facto life sentence. We agree.

A sentence of 46 years to life amounts to a de facto life sentence for a juvenile offender because it leaves the incarcerated individual without a meaningful life outside of prison. As our sister states have persuasively reasoned, "[t]he United

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

States Supreme Court viewed the concept of 'life' in *Miller* and *Graham* more broadly than biological survival; it implicitly endorsed the notion that an individual is effectively incarcerated for 'life' if he will have no opportunity to truly reenter society or have any meaningful life outside of prison." *Casiano v. Comm'r of Corr.*, 317 Conn. 52, 78, 115 A.3d 1031 (2015) (citing *Graham*, 560 U.S. at 75). "A juvenile offender," like Haag, "is typically put behind bars before he [or she] has had the chance to exercise the rights and responsibilities of adulthood, such as establishing a career, marrying, raising a family, or voting." *Id*. at 77. A 46-year sentence for Haag results in his losing meaningful opportunities to reenter society and to have a meaningful life.

A 46-year sentence for a 17-year-old offender means they will miss out on the developments of the world. They will inevitably fall behind. Technological advancements will have occurred during their decades in prison that will make readjustment to life on the outside difficult. The very way people interface with each other, and the world, will have dramatically changed. Such changes have already occurred since Haag's conviction in 1995. The Internet was a nascent thing; cell phones were, for the few who had them, only phones. Now, the Internet is ubiquitous: it is how many apply for jobs, how many (especially in a time of national crisis) are able to *do* their jobs at all.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Haag (Timothy)*, No. 97766-6

As *Casiano* shows, we are not the first court to come to such conclusions. *See* 317 Conn. at 54, 76-80 (holding that a 50-year minimum term "may be deemed a life sentence for purposes of *Miller*"). Several of our sister states, faced with this same issue, have come to the same or a similar result for much the same reasons. *See State v. Zuber*, 227 N.J. 422, 448, 152 A.3d 197 (2017) (55-year minimum sentence for juvenile is the "practical equivalent of life without parole"); *Bear Cloud v. State*, 2014 WY 113, ¶¶ 11, 33, 334 P.3d 132, 136, 141-42 (2014) (*Miller* applied to what was effectively a 45-year minimum sentence, which was the "functional equivalent of life without parole"); *see also State v. Null*, 836 N.W.2d 41, 70-71 (Iowa 2013) (52.5-year minimum term "is sufficient to trigger *Miller*-type protections"). These cases reasoned much as *Casiano* did: that life is more than just life expectancy and that a juvenile must have a meaningful opportunity to rejoin society after leaving prison. 317 Conn. at 78; *see also Null*, 836 N.W.2d at 71 ("The prospect of geriatric release, if one is to be afforded the opportunity for release at all, does not provide a 'meaningful opportunity' to demonstrate the 'maturity and rehabilitation' required to obtain release and reenter society as required by *Graham*." (quoting *Graham*, 560 U.S. at 75)); *Bear Cloud*, 2014 WY ¶ 34, 334 P.3d at 142 ("As a practical matter, a juvenile offender sentenced to a lengthy term-of-years sentence will not have a 'meaningful opportunity for release.'").

*State v. Haag (Timothy)*, No. 97766-6

These cases from our sister states are instructive. In light of them, and the foregoing principles, we hold that a juvenile offender sentenced to a 46-year minimum term simply has little chance to meaningfully engage with society as an adult. A juvenile sentenced to be released at the age of 63 has lost incalculably more than an adult in the same circumstances, the ability to work, to vote, or even to operate a motor vehicle. Moreover, a crime committed by a juvenile is inherently different from a crime committed by an adult, due to juveniles' decreased culpability. *See, e.g.*, *Bassett*, 192 Wn.2d 81 (discussing how children are different for sentencing purposes). Haag, having committed a terrible crime at the age of 17, deserved and received punishment—but given the shortened life expectancy and compromised health associated with life in prison, releasing Haag from confinement at the age of 63 deprives him of a meaningful opportunity to return to society, depriving him of a meaningful life. *See* Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003*, 103 AM. J. PUB. HEALTH 523, 523 (Mar. 2013) (discussing shorter life expectancy for incarcerated persons). Haag's sentence is therefore a de facto life sentence.

The State disagrees, asserting that Haag's sentence cannot be a de facto life sentence because the age at he which he will be eligible for release, 63, is shorter than the average human life-span. The State relies on *Ramos* for this conclusion. But *Ramos* did not hold that a sentence must exceed the average human life-span to

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

amount to a de facto life sentence; it indicated only that such a sentence *was* a de facto life sentence. 187 Wn.2d at 434. Any confusion on this matter was cleared up in *Delbosque*, where we clarified that *Ramos* "did not define 'de facto life sentence' as a 'total prison term exceeding the average human life-span.'" 195 Wn.2d at 122 (quoting *Ramos*, 187 Wn.2d at 434).

Today we determine that Haag's 46-year sentence amounts to a de facto life sentence; therefore his sentence is unconstitutional under the Eighth Amendment because the resentencing court expressly found Haag was "not irretrievably depraved nor irreparably corrupt." 1 VRP (Jan. 19, 2018) at 25; *see Montgomery*, 190 U.S. at 208 (*Miller* and its progeny prohibit life sentences imposed on children who are not one of the "'rare juvenile offender[s] whose crime reflects irreparable corruption.'" (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 479-80)); *Ramos*, 187 Wn.2d at 437 (*Miller* applies to de facto life sentences). In addition, in *Bassett*, we held that under article I, section 14 of our constitution, any life-without-parole sentence for a juvenile offender is unconstitutional. 192 Wn.2d at 91. Therefore, Haag's de facto life sentence is also unconstitutional under article I, section 14. *See id.*

24

*State v. Haag (Timothy)*, No. 97766-6

CONCLUSION

The resentencing court clearly misapplied the law because it placed far more emphasis on retributive factors than on mitigation factors when determining Haag's new sentence. It also abused its discretion because its finding lacked substantial evidence that Haag had not overcome the factors that led to the murder. In addition, we hold that Haag's sentence amounts to an unconstitutional de facto life sentence under both the state and federal constitutions. We reverse and remand for a new sentencing hearing in accordance with this opinion.[5]

---

[5] Amicus Korematsu Center argues that "where a sentencing court finds a child to be both less culpable and not irreparably corrupt, the sentence imposed should be at or near the 25-year minimum term allowed by the [*Miller*-fix] statute." Br. of Fred T. Korematsu Ctr. for Law & Equality as Amicus Curiae in Supp. of Appellant (Sept. 3, 2020) at 3. We decline to reach this argument, having resolved this case in Haag's favor on other grounds.

25

Whitener, J.

WE CONCUR.

González, C.J.

Gordon McCloud, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Haag*
(Johnson, J., concurring)

No. 97766-6

JOHNSON, J. (concurrence)—I agree with the majority's conclusion that the resentencing court abused its discretion and committed reversible error. I agree that the proper remedy is to vacate the sentence and remand for resentencing. Based on this, it is not necessary to go further and analyze whether the now vacated sentence amounts to a de facto life sentence.


_____
                    Johnson, J.


_____
                    Madsen, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

No. 97766-6

STEPHENS, J. (concurring in part, dissenting in part)—When Timothy Haag

was 17 years old, he killed his 7 year old neighbor. Haag was convicted of

aggravated first degree murder in 1995, and the sentencing court imposed the only

punishment then allowed by Washington law: life in prison without the

possibility of parole. *See* former RCW 10.95.030 (1993).[1]

Seventeen years after Haag's conviction, the United States Supreme Court

decided the Eighth Amendment to the United States Constitution bars the mandatory

imposition of life without parole (LWOP) sentences on juvenile homicide offenders

because "these laws prohibit a sentencing authority from assessing whether the law's

harshest term of imprisonment proportionately punishes a juvenile offender." *Miller*

---

[1] Had the prosecuting attorney filed a notice of a special sentencing proceeding, Washington law would have allowed Haag to be sentenced to death. *See* former RCW 10.95.030(2); RCW 10.95.040(3). The United States Supreme Court later held that the Eighth Amendment bars imposition of the death penalty on juvenile offenders. *Roper v. Simmons*, 543 U.S. 551, 575, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); U.S. CONST. amend. VIII.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

*v. Alabama*, 567 U.S. 460, 474, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). So Washington's legislature passed new laws—commonly called *Miller*-fix statutes—allowing juveniles like Haag to be resentenced in light of the "mitigating factors that account for the diminished culpability of youth as provided in *Miller*." LAWS OF 2014, ch. 130, §§ 9, 11; RCW 10.95.030(3)(b), 035.[2]

Haag was resentenced in 2018 and received a minimum term of 46 years in prison. He appealed, arguing the resentencing court did not meaningfully weigh his extensive—and uncontested—evidence of diminished culpability. Haag also argues his 46-year minimum term constitutes a de facto LWOP sentence in violation of the federal and state constitutions. The Court of Appeals rejected Haag's claims, and we granted review.

I agree with the majority's conclusion that Washington's *Miller*-fix statutes require courts to emphasize the mitigating qualities of youth over retributive factors when sentencing an offender who committed aggravated first degree murder as a child. Because Haag's resentencing court failed to do so, I agree the proper remedy

---

[2] Though *Miller* applies only to juvenile homicide offenders, our legislature also enacted a law allowing any juvenile currently serving a lengthy adult prison sentence for any other criminal offenses to receive a parole hearing with a presumption of "early release after serving no less than twenty years of total confinement." LAWS OF 2014, ch. 130, § 10; RCW 9.94A.730(1), (3). Juvenile homicide offenders resentenced under RCW 10.95.035 also receive a parole hearing with a presumption of release after they have served their minimum term. RCW 10.95.030(3)(f).

2

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

is to vacate Haag's sentence and remand for resentencing consistent with RCW 10.95.030(3)(b). But, like Justice Johnson, I believe that conclusion resolves this case and I would not reach the broader question of whether a 46-year minimum term constitutes an unconstitutional de facto LWOP sentence for any juvenile offender.

While I join Justice Johnson's concurrence, I write separately to explain why Haag's argument that a 46-year minimum sentence is unconstitutional is inconsistent with the United States Supreme Court's recent decision in *Jones v. Mississippi*.[3] Because this court's interpretation of the Eighth Amendment is bound by that decision, I am compelled to respectfully dissent from the majority's conclusion that Haag's 46-year minimum term constitutes an unconstitutional de facto LWOP sentence.

ANALYSIS

The Eighth Amendment prohibits sentencing courts from treating children like adults when imposing LWOP sentences. *Miller*, 567 U.S. at 474 ("[I]mposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children."). Sentencing courts must "take into account how children are different [from adults], and how those differences counsel against irrevocably

---

[3] 593 U.S. ___, 141 S. Ct. 1307, 209 L. Ed. 2d 390 (2021).

3

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

sentencing them to a lifetime in prison." *Id.* at 480. But the Eighth Amendment does not bar sentencing courts from imposing LWOP sentences on juvenile homicide offenders, so long as they consider the appropriateness of such punishments in light of the mitigating qualities of youth. *Id.* at 483 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty.").

The Supreme Court seemed to retreat from *Miller*'s announcement that it did not categorically bar LWOP sentences for any class of juvenile offenders in *Montgomery v. Louisiana*.[4] There, the Court held that "*Miller* drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption." *Montgomery*, 577 U.S. at 209. Drawing that line, the Court explained, "rendered life without parole an unconstitutional penalty for . . . juvenile offenders whose crimes reflect the transient immaturity of youth." *Id.* at 208 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989)); *see also id.* ("Even if a court considers a child's age before

---

[4] 577 U.S. 190, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016).

4

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 479-80)).

So courts across the country, including this court, understood and applied the Eighth Amendment to prohibit LWOP sentences for all juvenile offenders except those whose crimes reflect "irreparable corruption." *See, e.g.*, *State v. Ramos*, 187 Wn.2d 420, 444, 387 P.3d 650 (2017). It is on this understanding that the majority here concludes Haag's 46-year minimum term is an unconstitutional de facto LWOP sentence. *See* majority at 24 ("Today we determine that Haag's 46-year sentence amounts to a de facto life sentence; therefore his sentence is unconstitutional under the Eighth Amendment because the resentencing court expressly found Haag was 'not irretrievably depraved nor irreparably corrupt.'" (quoting 1 Verbatim Report of Proceedings (VRP) (Jan. 19, 2018) at 25)). But that understanding—that the Eighth Amendment categorically bars LWOP sentences for juvenile offenders capable of rehabilitation—is no longer good law.

I. Haag's Sentence is Not Unconstitutional under *Jones v. Mississippi*'s Interpretation of the Eighth Amendment

While Haag's case was pending before us, the United States Supreme Court again revisited its Eighth Amendment rule under *Miller*. *Jones*, 141 S. Ct. 1307.

5

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

*Jones* returned to *Miller*'s statement that the Eighth Amendment "require[s] that a sentencer consider youth as a mitigating factor when deciding whether to impose a life-without-parole sentence," but it "d[oes] not require the sentencer to make a separate finding of permanent incorrigibility before imposing such a sentence." *Id.* at 1316. In so holding, *Jones* retreated from *Montgomery*'s interpretation of *Miller*. *Id.* at 1328 (Sotomayor, J., dissenting) (noting the decision "guts" *Montgomery*'s interpretation of *Miller* and "reduces *Miller* to a decision requiring 'just a discretionary sentencing procedure where youth [is] considered.'" (alteration in original) (quoting *id.* at 1317)). Under *Jones*, the Eighth Amendment does not categorically bar LWOP sentences for juvenile homicide offenders who demonstrate their capacity for rehabilitation. Instead, "a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient" to permit the imposition of LWOP sentences on juvenile homicide offenders under the Eighth Amendment. *Id.* at 1313.

Haag's argument, accepted by today's majority, is premised on *Montgomery*'s now-rejected view that "states are not 'free to sentence a child whose crime reflects transient immaturity to life without parole'" under "the Eighth Amendment." *See* majority at 9-10 (quoting *Montgomery*, 577 U.S. at 211), 24 (concluding Haag's "sentence is unconstitutional under the Eighth Amendment because the resentencing

6

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

court expressly found Haag was 'not irretrievably depraved nor irreparably corrupt.'" (quoting 1 VRP (Jan. 19, 2018) at 25)). That view is unsustainable in light of *Jones*.

The majority admits "Justice Sotomayor's dissent . . . suggested that the *Jones* majority called this rule into question, if not outright abandoned it," but it nevertheless concludes that "the *Jones* majority does not, in fact, disturb this rule." Majority at 10 n.3. I acknowledge a dissent's view is not binding precedent. But when a dissent, a concurrence, and the majority opinion all agree on what a Supreme Court decision means, this court is not free to disregard that meaning. And here, every published opinion in *Jones* makes clear that the majority's holding means the Eighth Amendment *permits* a sentencing court to impose LWOP sentences on juvenile homicide offenders, even if they are not permanently incorrigible.

Justice Sotomayor's dissent makes that point in its opening paragraph:

> [T]he majority claims that the Eighth Amendment permits juvenile offenders convicted of homicide to be sentenced to life without parole (LWOP) as long as 'the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment.' In the Court's view, a sentencer never need determine, even implicitly, whether a juvenile convicted of homicide is one of 'those rare children whose crimes reflect irreparable corruption.' *Even if the juvenile's crime reflects 'unfortunate yet transient immaturity,' he can be sentenced to die in prison.*

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

*Jones*, 141 S. Ct. at 1328 (Sotomayor, J., dissenting) (emphasis added) (citations and internal quotation marks omitted) (citing *id.* at 1311; *Montgomery*, 577 U.S. at 209; *Miller*, 567 U.S. at 479).

    Justice Thomas's concurrence similarly explains the majority's holding:

> The [majority] opinion candidly admits both that *Miller*'s rule was "procedural" and that *Montgomery* "ma[de] the rule retroactive." The only way to reconcile these statements with the bottom-line judgment in this case—that Jones is not entitled to a determination whether he falls within a constitutionally protected category of offenders—is to reject *Montgomery*. And sure enough, the majority does just that, albeit in a footnote.

*Id.* at 1327 (Thomas, J., concurring) (second alteration in original) (citation omitted) (quoting and citing *id.* at 1315-16, 1316-18, 1317 n.4 (explaining *Montgomery* is "in tension" with many other decisions)).

    And the *Jones* majority itself explains that "permanent incorrigibility is not an eligibility criterion" or "a factual prerequisite" which "a sentencer [must] find . . . before sentencing a murderer under 18 to life without parole."[5] *Id.* at 1315, 1316 n.3. If the Eighth Amendment does not require courts to determine whether a juvenile offender is permanently incorrigible before sentencing them to LWOP,

---

[5] To be sure, the *Jones* majority does not make the consequences of its holding as explicit as it might have. But "[t]he Court is fooling no one." *Jones*, 141 S. Ct. at 1328 (Sotomayor, J., dissenting); *see also id.* at 1327 (Thomas, J., concurring) ("[T]he majority's whisper is worth restating above the line: *Montgomery* gave a good-for-one-ride ticket to a class of juvenile offenders, and its errors will never be repeated.").

8

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

inevitably some juvenile offenders who are not permanently incorrigible will be sentenced to LWOP. Therefore, the Eighth Amendment does not categorically bar the imposition of LWOP sentences on juvenile offenders who are not permanently incorrigible.[6]

Though I might prefer *Montgomery*'s interpretation of *Miller* to *Jones*'s as a matter of policy, I cannot ignore that *Jones*'s interpretation is controlling as a matter of Eighth Amendment law. Therefore, "[e]ven if the juvenile's crime 'reflects unfortunate yet transient immaturity,' he can be sentenced to die in prison." *Id.* at 1328 (Sotomayor. J., dissenting) (citation and internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 479) (describing the majority's holding). In Haag's

---

[6] The majority nevertheless suggests that because "*Jones* holds there is no *required* finding of incorrigibility before imposing a life without parole sentence on a juvenile," it does not disturb *Montgomery*'s rule that the Eighth Amendment forbids LWOP sentences for juveniles found not to be permanently incorrigible. Majority at 10 n.3. But that reading of *Jones* creates the absurd consequence that the Eighth Amendment forbids LWOP sentences for some juvenile offenders who are not permanently incorrigible (namely, those lucky enough to have a court make explicit findings on the record) but not for others. It cannot be that juvenile offenders lose the Eighth Amendment's protection merely because a judge decides not to make a finding that is not constitutionally required. *See Jones*, 141 S. Ct. at 1326 (Thomas, J., concurring) ("If *Montgomery* is correct about the existence of a concrete class of offenders who—as a matter of fundamental constitutional law—are categorically exempt from a sentence of life without parole, then there must be a determination as to whether Jones falls within that protected class. Otherwise, the 'line' *Miller* ostensibly 'drew . . . between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption' is more fanciful than real." (alteration in original) (quoting *Montgomery*, 577 U.S. at 209)).

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

case, this means the Eighth Amendment did not prohibit the resentencing court from exercising discretion to impose an LWOP sentence, much less the 46-year minimum term that gives Haag the opportunity for parole.

II. The Decisions of Other State Supreme Courts Do Not Support Categorically Barring a 46-Year Minimum Sentence

In my view, the majority unnecessarily decides that a 46-year minimum term "amounts to a de facto life sentence for a juvenile offender because it leaves the incarcerated individual without a meaningful life outside of prison." Majority at 20. In support of this broad holding, the majority cites four decisions from other state supreme courts. Majority at 21-22 (citing *Casiano v. Comm'r of Corr.*, 317 Conn. 52, 54, 115 A.3d 1031 (2015) (holding 50-year minimum term for juvenile implicates *Miller*); *State v. Zuber*, 227 N.J. 422, 448, 152 A.3d 197 (2017) (55-year minimum sentence for juvenile implicates *Miller*); *Bear Cloud v. State*, 2014 WY 113, ¶¶ 11, 33, 334 P.3d 132 (2014) (*Miller* applied to what was effectively a 45-year minimum sentence, which was the "functional equivalent of life without parole"); *State v. Null*, 836 N.W.2d 41, 70-71 (Iowa 2013) (52.5-year minimum term implicates *Miller*)). The majority effectively suggests we would join our sister states by recognizing a minimum term of 46 years constitutes a de facto life sentence for juvenile offenders. Majority at 22.

10

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

I respectfully disagree. We have already joined our sister states in recognizing that a de facto life sentence implicates the protections of *Miller*. *See Ramos*, 187 Wn.2d at 437 ("We now join the majority of jurisdictions that have considered the question and hold that *Miller* does apply to juvenile homicide offenders facing de facto life-without-parole sentences."). In reaching that conclusion, *Ramos* cited three of the four out-of-state cases the majority relies on today. *Id.* at 439 n.3 (citing *Casiano*, 317 Conn. at 72-75; *Bear Cloud*, 2014 WY 113, ¶ 33; *Null*, 836 N.W.2d at 72).

Like *Ramos*, these four out-of-state cases considered whether a lengthy term of years triggers *Miller*'s requirement that sentencing courts "consider[] the specific nature of the crimes and the individual's culpability before sentencing a juvenile homicide offender to die in prison." *Ramos*, 187 Wn.2d at 438-39; *see also Casiano*, 317 Conn. at 73 ("Our inquiry in the present case, therefore, focuses on whether the imposition of a fifty year sentence without the possibility of parole is subject to the sentencing procedures set forth in *Miller*."); *Zuber*, 227 N.J. at 448 ("[W]e find that the lengthy term-of-years sentences imposed on the juveniles in these cases are sufficient to trigger the protections of *Miller*."); *Bear Cloud*, 2014 WY 113, ¶ 32 ("We next turn to the question of whether a lengthy aggregate sentence . . . whose practical effect is that the juvenile offender will spend his lifetime in prison triggers

11

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

the Eighth Amendment protections set forth by the United States Supreme Court in *Miller*."); *Null*, 836 N.W.2d at 72 ("We conclude that *Miller*'s principles are fully applicable to a lengthy term-of-years sentence . . . because an offender sentenced to a lengthy term-of-years sentence should not be worse off than an offender sentenced to life in prison without parole who has the benefit of an individualized hearing under *Miller*."). All recognize that a *Miller* analysis is necessary before a court may impose a lengthy sentence that is comparable to an LWOP sentence.

However, none of these cases hold that the Eighth Amendment prohibits a lengthy sentence that "results in [a juvenile offender] losing meaningful opportunities to reenter society and to have a meaningful life." Majority at 21. Instead, our sister states have determined only that juvenile offenders may not be so sentenced *unless they received the protections of the Eighth Amendment under* Miller. And *Miller* itself did not even "consider . . . [the] argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles." 567 U.S. at 479. Instead, *Miller* "mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." *Id.* at 483. Therefore, the cases cited by the majority stand only for the proposition that juvenile offenders cannot be sentenced to die in prison unless the sentencing court first considers whether that sentence is appropriate in light of

12

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

the mitigating qualities of the offender's youth. And that consideration is precisely what Haag will receive when he is resentenced on remand. As *Jones* makes clear, the Eighth Amendment requires nothing more.

The majority attempts to buttress its holding that a 46-year sentence is categorically unconstitutional with a single reference to a case interpreting Washington's constitution as more protective than the Eighth Amendment. *See* majority at 24 ("In addition, in *Bassett*, we held that under article I, section 14 of our constitution, any life-without-parole sentence for a juvenile offender is unconstitutional. Therefore, Haag's de facto life sentence is also unconstitutional under article I, section 14." (citation omitted) (citing *State v. Bassett*, 192 Wn.2d 67, 91, 428 P.3d 343 (2018))). But the Eighth Amendment does not prohibit Haag's sentence, so the majority must explain why Washington's constitution does. And the majority does not explain how *Bassett*'s reasoning—which rejects the notion that sentencing courts can accurately assess a juvenile offender's capacity for rehabilitation, *see Bassett*, 192 Wn.2d at 89-90—supports its holding that a

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

sentencing court's assessment of a juvenile offender's capacity for rehabilitation controls which sentences are permissible under article I, section 14. [7]

We have never announced that a term of years less than life is categorically equivalent to an LWOP sentence for juvenile offenders. *See Ramos*, 187 Wn.2d at 439 n.6 ("We reserve ruling on that question until we have a case in which it is squarely presented."); *State v. Delbosque*, 195 Wn.2d 106, 122, 456 P.3d 806 (2020) ("Although the trial court clearly intended to impose a life sentence when setting Delbosque's 48-year minimum term, the question of whether this amounts to a de facto life sentence is not squarely presented here, either. We therefore decline to address the issue."). *Bassett* alone cannot support such a holding, as it did not

---

[7] The majority does not consider how its focus on Haag's rehabilitation as the reason for invalidating his 46-year minimum term stands in tension with the reasoning in *Bassett*. The consequences of deciding that a term of years sentence is a de facto LWOP sentence differ significantly between the state and federal constitutions. Under the Eighth Amendment, such a determination means sentencing courts must consider the mitigating qualities of youth before imposing that sentence; in other words, the sentence implicates *Miller*'s protections. *See Ramos*, 187 Wn.2d at 440. But under *Bassett*'s reasoning, that same determination would lead to the conclusion that article I, section 14 of the Washington constitution categorically bars that term of years sentence for *any juvenile offender*, regardless of whether they have demonstrated rehabilitation. *See Bassett*, 192 Wn.2d at 89-90. Thus, the majority's reasoning and *Bassett*'s reasoning appear incompatible. Lower courts will have good reason to wonder when they must assess the individual offender's rehabilitation before imposing a term of years and when a specific term of years is simply unconstitutional for any juvenile offender. We should not announce a major new rule of state constitutional law absent adequate briefing and analysis explaining the applicable standard to guide lower courts in the future.

14

*State v. Haag*
(Stephens, J., concurring in part, dissenting in part)

involve a term of years sentence with the possibility of release. Yet the majority provides no other reasoning or authority under Washington's constitution.

The majority's de facto LWOP holding is all the more puzzling because it is unnecessary to resolve the case before us. This court unanimously agrees that Haag must be resentenced in light of the evidence of his rehabilitation, with the appropriate focus on the mitigating qualities of youth under RCW 10.95.030(3)(b). *See* majority at 18 ("We hold that, in a *Miller*-fix hearing conducted under RCW 10.95.030, retributive factors must count for less than mitigating factors."); concurrence at 1 ("I agree with the majority's conclusion that the resentencing court abused its discretion and committed reversible error. I agree that the proper remedy is to vacate the sentence and remand for resentencing."). That decision is important—it will ensure Haag and others like him will be resentenced in light of their evidence of rehabilitation, consistent with RCW 10.95.030(3)(b) and the constitutional protections we, and our sister states, have recognized under the Eighth Amendment. Because that decision is sufficient to resolve this case, I would end our analysis there.

CONCLUSION

Under RCW 10.95.030(3)(b), Haag is entitled to a new resentencing hearing in which the court gives due weight to the mitigating qualities of youth described by

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Miller*, including Haag's proven capacity for rehabilitation. The Eighth Amendment does not categorically prohibit the 46-year minimum term sentence he received, and the majority does not explain why Washington's constitution would do so. Accordingly, I respectfully concur in the majority's first holding and dissent from its second.

Stephens, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.