**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 11, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 11, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 98340-2 |
| | ) | |
| ANTOINE EUGENE DAVIS, | ) | En Banc |
| | ) | |
| Petitioner. | ) | Filed: August 11, 2022 |
| | ) | |
| _____ | ) | |

MADSEN, J.—Antoine Eugene Davis was 21 years old when he committed and was convicted of first degree murder and second degree attempted murder. RCW 9A.32.030(1)(a) (murder in the first degree), .050(1)(b) (murder in the second degree); RCW 9A.28.020(1) (attempted murder in the second degree). He received a standard range sentence of 767 months. Davis filed this personal restraint petition (PRP) more than one year after his judgment and sentence finalized and contends it is timely for two reasons: (1) *In re Personal Restraint of Monschke*[1] constitutes a significant, material, and retroactive change in law that applies to his de facto life sentence and (2) recent advances

---

[1] 197 Wn.2d 305, 482 P.3d 276 (2021) (plurality opinion).

No. 98340-2

in neuroscience for late-aged adolescents qualify as newly discovered evidence. RCW 10.73.100(6), (1).

Because Davis seeks retroactive application of *Monschke*, he must identify, among other things, a holding that is retroactive and that applies to him. This he fails to do. *Monschke* concerns only defendants who were sentenced pursuant to RCW 10.95.030(1), and Davis was convicted under different statutes that do not mandate life sentences. Further, *Monschke* concerned a mandatory life sentence provision as applied to 19- and 20-year-old defendants. Davis is 21 years old.

Davis also fails to show that recent neuroscience constitutes newly discovered evidence, another exception to the time bar. Even if he was able to do so, Davis fails to show prejudice because *Miller v. Alabama*,[2] *Monschke*, and other juvenile sentencing cases have not been applied to 21-year-old defendants, and he fails to show there is a connection between his circumstances and the recent science. Because Davis does not satisfy any of the statutory criteria that exempt his petition from the one-year time bar, we affirm the Court of Appeals' order dismissing Davis's PRP as untimely.

## BACKGROUND

Davis relies on the facts from his direct appeal, and they are undisputed. Believing that Mario Spearman had ordered the shooting of their friend, Davis and three associates decided to seek retribution. *State v. Davis*, noted at 170 Wn. App. 1005, 2012 WL 3264239 at *1. They located Spearman in his car at a traffic intersection. One of

---

[2] 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

2

No. 98340-2

Davis's group carried an assault rifle and Davis carried a handgun. While Spearman's car was stopped, Davis and two associates left their car, ran to Spearman's car, and opened fire. The group fired about 30 bullets of different sizes at the car before leaving the scene. Spearman was killed, the front-seat passenger was injured and survived, and the two back-seat passengers (a woman and her child) were not seriously wounded. Davis was 21 years old when he committed the charged crimes.

Police arrested Davis and the three members of his group. They were charged with one count of first degree murder for Spearman's death and three counts of attempted first degree murder for the other passengers. The individual driving Davis on the night of the murder pleaded guilty to lesser offenses and testified against Davis and the group. The jury convicted all three of first degree murder and the lesser included offense of attempted second degree murder for the passengers. Davis requested an exceptional mitigated sentence or one at the bottom of the range because, at his age, it would "essentially" take Davis's life away. Pet'r's Suppl. Br., Attach. at 25 (transcript of Davis's sentencing hearing). Defense counsel stated that Davis's actions were "out of character," *id*. at 24, and argued for an exceptional 516-month sentence based on a "multiple offense policy." State's Resp. to PRP, App. B (Wash. Ct. App. No. 79937-1-I (2019)) at 3-4 (defendant's sentencing memorandum). Davis did not seek an exceptional sentence based on his youth.

The sentencing judge indicated that she tried but was unable to find a reason to mitigate the sentences for Davis and his accomplices. The judge imposed the low end of

3

No. 98340-2

the sentencing ranges for all the defendants. Davis received 767 months in confinement (approximately 64 years), including 240 months for firearm enhancement time.

Davis appealed only his convictions for attempted murder. *Davis*, 2012 WL 3264239 at *2. In 2012, the Court of Appeals affirmed in an unpublished decision. The mandate issued in March 2013. Davis filed three collateral attacks in the following years.[3] He filed the current petition in 2019 in this court, seeking a new sentencing hearing. The motion was transferred to the Court of Appeals for consideration. Davis argued that recent neuroscience constitutes newly discovered evidence and exempted his otherwise untimely petition under RCW 10.73.100(1). In support of his PRP, Davis included a declaration from Dr. Laurence Steinberg, an adolescent developmental psychologist, which describes the evolution of neuroscience in later-aged adolescents. The State countered that the late-adolescent brain research on which Davis relied was not new and that Davis could have presented the arguments prior to filing the PRP.

Division One of the Court of Appeals dismissed the petition as untimely and successive. Order of Dismissal, *In re Pers. Restraint of Davis*, No. 79937-1-I, at 2 (Wash. Ct. App. Mar. 4, 2020). The court noted that Davis made a similar argument in an earlier petition that the sentencing court failed to consider his relative youth as a mitigating factor, and that Davis did not explain why he did not raise the argument previously. Next, the court concluded that Davis failed to show the evidence would probably change the result at trial because sentencing courts have always had discretion

---

[3] State's Resp. to PRP at 3 (Court of Appeals nos. 67283-5, 70678-1, 78312-2), App. D (Supreme Court cause no. 95977-3).

4

No. 98340-2

to consider youth and Davis presented no evidence showing the court declined to take his youthfulness into consideration. *Id.* at 2 (citing *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 336-38, 422 P.3d 444 (2018)).

Davis sought review in this court, which we granted and consolidated with *In re Personal Restraint of Rivas* (No. 98031-4). Order, No. 98340-2 (Wash. Nov. 5, 2021). In December 2021, Rivas alerted the court that he would be imminently resentenced and intended thereafter to withdraw his motion for discretionary review. The court granted the joint motion to strike oral argument and dissolved the consolidation on December 15, 2021. *Davis* remained on our docket and proceeded independently for consideration.

ANALYSIS

Relief by way of collateral challenge to a conviction is an "extraordinary" remedy for which petitioners must overcome a "'high standard before [we] will disturb an otherwise settled judgment.'" *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013) (quoting *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)). Generally, petitioners must bring a collateral attack against their judgment and sentence within one year of that judgment becoming final. RCW 10.73.090(1), (2). An untimely petition may be considered if the judgment was not valid on its face, the court lacked competent jurisdiction, or the petition is based solely on one or more of the exceptions to the time bar listed in RCW 10.73.100. Davis alleges two such exemptions: (1) *Monschke* is a retroactive change in the law that is material to his sentence, RCW

5

No. 98340-2

10.73.100(6), and (2) recent neurological studies of late-aged adolescents constitute newly discovered evidence, RCW 10.73.100(1). For the following reasons, we disagree.

1. PRP of *Monschke*

This court's decision in *Monschke* is split between a lead opinion, concurrence, and dissent. In *Monschke*, two defendants, aged 19 and 20, were convicted of aggravated first degree murder pursuant to RCW 10.95.020, which mandated a sentence of life without parole (LWOP) pursuant to RCW 10.95.030. 197 Wn.2d at 306, 308. Timeliness of the PRP was a threshold issue. *Id.* at 309-11. The *Monschke* petitioners argued that the aggravated murder sentencing statute was unconstitutional as applied, satisfying the constitutionality exemption in RCW 10.73.100(2). *Id.* RCW 10.73.100(2) provides that a PRP is exempt from the one-year time bar if it asserts that the statute the defendant was *convicted* of violating was unconstitutional.

The lead opinion, signed by three other justices, reasoned that the aggravated murder statute was unique from other sentencing provisions. *Id.* at 310. RCW 10.95.030(1) requires the State to charge and the jury to find the defendant "guilty" of the same aggravated murder charge. The lead opinion therefore reasoned that a challenge to the sentencing requirement of .030(1) was a challenge to the statute the petitioners were "'convicted of violating.'" *Id.*

The lead opinion then concluded that the 19- and 20-year-old petitioners were entitled to resentencing under *Miller*. The opinion noted that state and federal constitutional protections for juvenile defendants have become more protective in

6

accordance with society's evolving standards of decency and that legislative line-drawing around age has historically been an arbitrary decision. *Monschke*, 197 Wn.2d at 307, 314-21. Most relevant to Davis's claim, the opinion observed that no "meaningful" developmental distinction exists in current neuroscience between 17- and 18-year-olds as a class. *Id*. at 321-25. Thus, the lead opinion concluded that defendants under and over the age of 18 are entitled to *Miller*'s constitutional protections of individualized sentencing and consideration of youth as a mitigating factor. *Id.* at 326. The lead opinion relied on *Miller*'s mandate that a sentence follow a certain process: consider an offender's youth before imposing a particular penalty. *Id*. at 327 (citing *Miller*, 567 U.S. at 483). This process requires individualized sentencing. *Id.* Because RCW 10.95.030 precluded such sentencing, the lead opinion would hold the statute unconstitutional under article I, section 14 as applied to the 19- and 20-year-old petitioners. *Id.* at 326, 329.

The dissenting opinion disagreed, first observing that the plain language of RCW 10.73.100(2) distinguishes convictions from sentences. *Id.* at 334-35 (Owens, J., dissenting). The dissent also disagreed that the 19- and 20-year-old petitioners were equivalent to juveniles and entitled to *Miller* protections. *Id.* at 331-32. In the dissent's view, the lead opinion improperly elevated evolving neuroscience above legislative enactments. *Id.* at 341. The dissent would have held that the *Monschke* petitioners were not children but adults when they committed aggravated murder and therefore not entitled to resentencing to consider their relative youthfulness. *Id.* at 341.

7

No. 98340-2

The concurrence agreed with the lead opinion in result but diverged on the reasoning underlying it. Regarding the timeliness of the petitioners, the concurrence agreed with the dissent that RCW 10.73.100(2) applies to violations of substantive criminal statutes found unconstitutional rather than sentencing statutes. *Id.* at 329 (González, C.J., concurring). Instead, the concurrence would have held the petitions timely under *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015). *Monschke*, 197 Wn.2d at 329 (citing RCW 10.73.100(6)).

Turning to Davis's petition, we conclude that *Monschke* is not material. PRPs are exempt from the one-year time bar under RCW 10.73.100(6) if they can identify a significant change in the law that is material and that applies retroactively. *In re Pers. Restraint of Colbert*, 186 Wn.2d 614, 619, 380 P.3d 504 (2016). Neither case law nor statute requires these elements to be considered in a particular order. *Light-Roth*, 191 Wn.2d at 333.

Davis contends here that *Monschke* constitutes a significant and material change that should be applied retroactively to his de facto LWOP sentence of 767 months. He contends that the lead opinion in *Monschke* found no meaningful developmental difference between the brains of defendants under the age of 18 and those over the age of 18. Davis, at age 21, claims he was entitled to argue youth as a mitigating factor at sentencing based on what he believes is the holding of *Monschke*. We disagree.

First, *Monschke*'s procedural and substantive discussions concerned Washington's aggravated murder statute, RCW 10.95.030, which *required* LWOP sentences for

8

defendants aged 18 and older. Davis, on the other hand, was convicted of violating different statutes—RCW 9A.32.030(1), RCW 9A.32.050(1), and RCW 9A.28.020(1). No provision required imposition of a life sentence. Second, RCW 10.95.030 precluded sentencing courts from exercising any discretion to consider youth. This lack of discretion was a key factor in the lead opinion's analysis, which reasoned that RCW 10.95.030 was unconstitutional as applied. *See Monschke*, 197 Wn.2d at 325-26, 329. In contrast, the court in Davis's case had discretion to impose an exceptional sentence based on various factors including youth. *See Light-Roth*, 191 Wn.2d at 336 ("RCW 9.94A.535(1)(e) has always provided the opportunity to raise youth for the purpose of requesting an exceptional sentence downward, and mitigation based on youth is within the trial court's discretion."); *O'Dell*, 183 Wn.2d at 698-99. Finally, the petitioners in *Monschke* were 19- and 20-year-olds when they committed aggravated murder while Davis was 21 when he committed the charged crimes.

In short, Davis was convicted under a different statute than at issue in *Monschke*, the trial court sentenced him at the low end of the standard range, that court had discretion to depart from the standard range based on youth (among other factors), and Davis was outside the age range of the petitioners who received relief in *Monschke*. For the same reasons, even assuming that *Monschke* is retroactive, it is of little use to Davis because Davis was convicted of a different offense and outside the applicable age range governed by *Monschke*.

No. 98340-2

Furthermore, Davis's argument is anchored on the neurological observations in *Monschke*, but it overlooks their context. As previously noted, the lead opinion held that the PRPs at issue were timely under RCW 10.73.100(2)'s constitutionality exception and that the aggravated murder statute violated article I, section 14 of our state constitution. *Monschke*, 197 Wn.2d at 310, 329. The concurrence agreed that the petitioners should receive a new sentence under *O'Dell* rather than under .100(2). *Id.* at 329. Five justices agreed that the aggravated murder statute was unconstitutional and essentially provided "as applied" relief to the petitioners. The lead opinion's neuroscientific discussion is tied to its analysis of the aggravated murder statute and its holding and reasoning are limited to the statute at issue (RCW 10.95.030) as applied to the petitioners (aged 18-20 years old). The case is not material to Davis. Accordingly, Davis does not satisfy the exception to the time bar under RCW 10.73.100(6).

     2. <u>Scientific Evidence of Late-Adolescent Brain Development Does Not Qualify as Newly Discovered Evidence under RCW 10.73.100(1)</u>

RCW 10.73.100(1) provides that PRPs are exempt from the one-year time bar if based on "[n]ewly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion." Davis contends his PRP meets this exemption because recent neurological studies, such as those discussed in the declaration of Davis's expert, Dr. Laurence Steinberg, were unavailable when he was sentenced and show that late-adolescent brains are indistinguishable from those of juveniles regarding impulsive judgment, peer influence, and ability to change. The State offers two arguments in response. First, the newly discovered evidence exception applies

10

No. 98340-2

only to evidence that would change the result of a petitioner's trial, not their sentence.

Second, the proffered adolescent brain development science has been available since the early 2000s.

This issue is shared with *Davis*'s companion case, *In re Personal Restraint of Kennedy*, No. 99748-9 (Wash. July 28, 2022).

3. Assuming Neurological Studies Constitute Newly Discovered Evidence, Davis Fails To Show the Evidence Was Material to His Sentence

Even assuming, as in *Kennedy*, that the newly discovered evidence test applies to sentencing proceedings, Davis must show that the evidence was material to his sentence. *See State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981). In his PRP, Davis provides a declaration from Dr. Steinberg (discussed in detail below), stating that developmental studies of late-aged adolescents have only recently become available and that this evidence puts Davis's conduct in "a [n]ew [l]ight." PRP at 9 (Wash. Ct. App. No. 79937-1-I (2019)) (quoting Steinberg declaration). But neither Davis nor his expert connects this new neuroscience to *Davis's* behavior. *See Light-Roth*, 191 Wn.2d at 336 (defendants may argue youth as a mitigating factor and must show that youthfulness relates to the commission of the crime); *State v. Delbosque*, 195 Wn.2d 106, 121, 456 P.3d 806 (2020) (citing *State v. Ramos*, 187 Wn.2d 420, 387 P.3d 650 (2017) (recognizing that youth as mitigating evidence is considered based on the facts of the case)). Davis claims only that the new science shows late-aged adolescents have impulsive judgment and are susceptible to peer pressure, as are juveniles. Yet Davis himself admits "[t]hat is not to say that Davis was pressured or under duress." Pet'r's

11

No. 98340-2

Suppl. Br. at 18. Davis does not show that recent developmental science is material to his sentence because he fails to show that his behavior reflected peer pressure or total lack of impulse control. *See* Suppl. Br. of Resp't at 8 (noting Davis and his associates planned to seek retribution and sought out Spearman, attacking him in the middle of traffic).

4. Davis Fails To Show Prejudice

Even accepting Davis's sentencing evidence that late-adolescent brains are equivalent to juvenile brains in executive functions, he does not show that the evidence would have changed his sentence.

A personal restraint petitioner is required to establish actual prejudice arising from a constitutional error or a nonconstitutional error that constitutes a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). To show actual and substantial prejudice, a petitioner must show that the outcome would more likely than not have been different had the alleged error not occurred. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982). Davis does not make this showing.

Davis contends first that he received a de facto life sentence of 767 months that is unconstitutional under *State v. Haag*, 198 Wn.2d 309, 329, 495 P.3d 241 (2021). Davis argues that *Haag* requires a sentencing court to receive and consider mitigation evidence of youth and that the same analysis applies to late-aged adolescents sentenced to life. *Haag* concerned an undisputed juvenile defendant aged 17, who was resentenced under

No. 98340-2

Washington's *Miller*-fix statute and resentenced to a term of 46 years to life, despite the sentencer finding Haag was not irretrievably depraved or corrupt. 198 Wn.2d at 313. Unlike *Haag*, Davis was an adult (21 years old) at the time he committed murder and attempted murder and had not been resentenced. Davis states that when he was originally sentenced, the judge did not find that he was irretrievably corrupt when such a finding is required under *Haag*, therefore prejudicing him. *See* Pet'r's Suppl. Br. at 13. But, because this court has not held that 21-year-olds are equivalent to juveniles for *Miller* sentencing protections, no such finding was required.

Davis next asserts that he was prejudiced based on the analysis in *In re Personal Restraint of Ali*, 196 Wn.2d 220, 474 P.3d 507 (2020), *cert. denied*, 141 S. Ct. 1754 (2021), and *In re Personal Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 474 P.3d 524 (2020), *cert. denied*, 141 S. Ct. 1753 (2021). In *Ali*, this court reversed and remanded the petitioner's case because no evidence was presented to suggest the sentencing court considered mitigating circumstances based on youth, and the sentencing court then imposed a standard sentence believing it lacked discretion to impose less. 196 Wn.2d at 243-45; *see also Domingo-Cornelio*, 196 Wn.2d at 268. Similarly, in Davis's view, a petitioner is harmed when a sentencing court fails to consider mitigating qualities of late-aged adolescents because their developmental deficiency can reduce culpability. For the same reasons as *Haag*, *Ali* and *Domingo-Cornelio* do not apply in this case.

Last, Davis argues that only studies conducted after his sentencing in 2010 show that juveniles and late-aged adolescents share "'mitigating qualities of youth.'" Pet'r's

13

No. 98340-2

Suppl. Br. at 17-18. Davis relies on the declaration by Dr. Steinberg, who considered "whether individuals between 18 and 21 also share the attributes of adolescents under 18 that trigger the constitutional protections the Supreme Court has already recognized for mid-adolescents." PRP, Decl. of Laurence Steinberg, at 3 (Wash. Ct. App. No. 79937-1-I (2019)). Dr. Steinberg states that over the last 20 years, considerable scientific research establishes that "adolescents are more impulsive, prone to engage in risky and reckless behavior, motivated more by reward than punishment, and less oriented to the future and more to the present" than adults. *Id*. Ultimately, Dr. Steinberg concludes "there is no scientific evidence to suggest a meaningful psychological or neurobiological distinction that can be drawn between individuals who are nearly 18 years old and those who are between 18 and 21." *Id*. at 14. In Dr. Steinberg's view, mandatory LWOP sentences for defendants should be prohibited in cases involving defendants under the age of 21.

But Davis fails to show his own expert witness's testimony would have benefited him at sentencing. Dr. Steinberg's declaration considers developmental research between 18- to 21-year-olds. Because Davis was 21 when he committed the charged crimes, he is outside the age range discussed in Dr. Steinberg's declaration. *See id.* (noting no scientific distinction can be drawn between those nearly 18 years old and those "who are *between 18 and 21*." (emphasis added)).[4]

---

[4] Research on whether and how late-adolescent brains (over the age of 21) reflect those of juveniles exhibiting the hallmarks of immaturity is not yet definitive. This court considered similarly indefinite science in *State v. Fraser*, 199 Wn.2d 465, 509 P.3d 282 (2022), concerning a per se cannabis limit for driving under the influence. The scientific community agrees this limit cannot be precisely identified. *Id*. at 478 (noting that unlike blood alcohol content, there is no one level at which every person is impaired when consuming cannabis). We noted that

14

No. 98340-2

Further, Davis does not show that research on poor impulse control in late-aged adolescents was not available until recently. In *O'Dell*, this court cited numerous studies addressing neurodevelopment in late-aged adolescents published as early as 2004. 183 Wn.2d at 692 n.5 (quoting Jay N. Giedd, *Structural Magnetic Resonance Imaging of the Adolescent Brain*, 1021 ANN. N.Y. ACAD. SCI. 77 (2004) ("[T]he dorsal lateral prefrontal cortex, *important for controlling impulses*, is among the latest brain regions to mature without reaching adult dimensions until the early 20s." (emphasis added))). Davis attempts to overcome such studies by claiming that while structural brain distinctions were recognized before his 2010 sentencing, he could not argue his maturing brain and peer pressure reduced his culpability. Though the consequence of structural differences between late-adolescent and adult brains is certainly a refinement in the science, Davis could have argued his late-developing impulse control affected his culpability as early as 2004.

Because Davis was 21 when he committed the charged crimes, he was considered an adult for sentencing. Nevertheless, this court explained that sentencing courts have always had the discretion to consider a defendant's youthfulness. *Light-Roth*, 191 Wn.2d at 336-38. Davis does not present any evidence of the impact of youth on his conduct or of the court failing to take his youthfulness into consideration, nor does he provide any

---

scientific precision is not required: lawmakers may constitutionally delineate between sobriety and impairment even when science does not provide a precise dividing line as long as the decision is rationally related to a government interest. *Id*. at 479-80. As in *Fraser*, given the state of the science, we defer to the legislature on the dividing line between late-adolescent and adult brains.

No. 98340-2

link between the science of brain development and his own behavior or culpability in his PRP. Accordingly, Davis does not show that the outcome of his sentence would have changed had he been able to present newly discovered developmental research on late-aged adolescents. *Hagler*, 97 Wn.2d at 825 (even showing that an error created a possibility of prejudice is insufficient to merit collateral relief).

## CONCLUSION

Davis does not meet any of the claimed exceptions to RCW 10.73.090's one-year time bar. He does not show that *Monschke* constitutes a significant, retroactive, and material change in the law. RCW 10.73.100(6). Davis also fails to show that RCW 10.73.100(1)'s newly discovered evidence exemption applies, and, even assuming it does, he fails to show that recent developmental evidence on late-aged adolescents constitutes such newly discovered evidence or that his sentence would have changed had he been able to present it. Davis's PRP is untimely. Therefore, we affirm the Court of Appeals' order dismissing Davis's petition.

_____
                       Madsen, J.

WE CONCUR:

_____        _____

_____        _____
           Johnson, J.

_____        _____
           Owens, J.                                     Montoya-Lewis, J.

_____        _____
           Stephens, J.                               Whitener, J.

*In re Pers. Restraint of Davis*, No. 98340-2
(Yu, J., concurring)

No. 98340-2

YU, J. (concurring) — I agree with the majority that *In re Personal Restraint of Monschke*[1] is not "material" to Antoine Davis's sentence as required by RCW 10.73.100(6), and the neurological studies Davis points to are not "[n]ewly discovered evidence" within the meaning of RCW 10.73.100(1). Therefore, I join Parts 1 through 3 of the majority's analysis, as well as its determination that Davis's personal restraint petition must be dismissed as untimely. However, I cannot join Part 4 of the majority's analysis, which consists of dicta unnecessary to the resolution of this case. I therefore respectfully concur.

_____
Yu, J.

_____
González, C.J.

_____
Gordon McCloud, J.

---

[1] 197 Wn.2d 305, 482 P.3d 276 (2021) (plurality opinion).

1